In Special Term—November 1854.

SPENCER, J. presiding.

ELIZA LEE *vs.* THE FRATERNAL MUTUAL INSURANCE Co.,
THE UNITED STATES LIFE INSURANCE ANNUITY & TRUST Co.,
JOHN L. VATTIER et al.

Where in a policy of Insurance there is an acknowledgement of receipt of premium, if the insurers are not estopped from denying its payment, it at least devolves upon them to show, by clear and satisfactory testimony, the non-payment of the premium. And especially in a case where notice has not been given to the insured, before the loss happens, that such non-payment will avoid the policy.

The mere fact that the books of the insurers show no account of, or credit for the payment, is not sufficient.

Where an agent contracts in his own name, without disclosing his interest, though in fact for the *exclusive benefit* of another person, though, perhaps, in such case the agent might be passed by and suit brought directly against the principal, yet both cannot be bound as *principals*. The plaintiff will be put to elect which she will pursue.

Such suit might possibly be sustained against both jointly—on the ground of fraud or collusion, &c.

*Inconsistent* and *incongruous* claims cannot be joined in a petition; in such case the plaintiff will be put to her election on which to proceed.

An assignment of a claim by a *cestui que trust* is good so as to enable the assignee to sue under the Code.

A plaintiff cannot in a suit against a defendant, on a contract to recover money, join debtors of the defendant, and seek to subject their debts to payment of his judgment when recovered; there is no privity between them.

SPENCER, J.

The petition in this case sets forth, that on the 25th day of February 1853, the Fraternal Mutual Insurance Company, a corporation created by the laws of Ohio, issued a policy of insurance to Richard H. Lee, whereby, in consideration of $29.50 then paid, and of the annual premium of $114, to be paid upon the 25th day of February in each year thereafter, they agreed to insure the life of said Lee, for *the sole use and benefit of the plaintiff*, his wife, for the term of seven years thereafter, in the sum of $5000, to be paid to her, in the event of his death

28

during said period, within ninety days after due notice and proof of such death. That Richard died on the 21st day of July thereafter; and that on the 14th of October following, due notice and proof of his death were given to said company. That all the conditions, stipulations, agreements &c., in said policy contained, and on the part of said Richard and wife to be fulfilled, have been, and were in all things faithfully complied with. And although more than 90 days have since elapsed &c., yet said sum of $5000 remains wholly unpaid.

The petition further sets forth, that on the 1st October 1852, an agreement was entered into between the said company and their co-defendants, the said United States Life Insurance Annuity and Trust Company, (a corporation created by the laws of Pennsylvania, but doing business in Cincinnati,) whereby the former sold and transferred to the latter all all its property, assets, and business, and agreed thereafter to transact all its business in its own name, but for the sole profit, and at the entire expense of the latter company—they to indemnify the former, against all losses accruing upon risks assumed, &c. The effect of which agreement, it is alleged, is to render the latter company liable to the plaintiff for the loss arising under the policy aforesaid.

The petition further sets forth, that in pursuance of the charter of the Fraternal Mutual Co., John L. Vattier, Richard Conkling, and the other defendants in said cause, executed their several promissory notes, for various sums, amounting in all to $48,000, being for premiums in advance, for policies issued, or to be issued to them by said company; said notes being intended under said charter, to provide a fund for the payment of losses incurred by

the company in default of other funds to meet the same, which several notes were afterwards surrendered to the respective makers thereof, without consideration, and in violation of the plaintiff's rights.

The petition finally avers, that, nothwithstanding the premises, the defendants refuse to pay the said sum due plaintiff by the terms of said policy; wherefore she demands a judgment against them for the sum of $5000, and interest, from the 13th day of January last.

The Fraternal Mutual Insurance Company being in default for answer, a judgment was entered up against her by the Court of Common Pleas, on the 4th day of March 1854, in favor of the plaintiff, for the amount claimed in the petition, with costs, upon which an execution has been issued, as appears from the transcript, &c.

On the 14th April, the plaintiff filed an amended and supplemental petition, setting forth, that on the 24th day of February 1853, The United States Life Insurance Annuity and Trust Co., in pursuance of the agreement of 1st October 1853, issued a policy of re-insurance to The Fraternal Mutual Co., whereby, in consideration of said agreement, and of the sum of $28.50 then paid, and of the quarterly premium of $28.50 to be paid on the 24th days of May, August, November, and February, in every year thereafter, they insured the life of said Richard H. Lee, to John L. Vattier, president of the Fraternal Mutual Co., and Stephen Crawford, president of said U. S. Life Ins. Ann. & Trust Co. in trust for the said Fraternal Mutual Co., in the sum of $5000, for seven years thereafter, to be paid in 90 days after due notice and proof of death, &c. That due notice and proof of such death were given on the 19th day of October 1853. That all the

conditions, stipulations, agreements &c. in said policy contained, on the part of said Lee, and of said Fraternal Mutual Ins. Co., to be performed, were fully complied with and observed. And that on the 18th day of March last, the Fraternal Mutual Co., for a valuable consideration, assigned to the plaintiff all her interest in said policy, and the money insured thereby.

The amended petition further sets forth, that at the time of the surrender, by the Fraternal Mutual Co., of the stock notes given by Vattier, and his co-defendants, and in consideration thereof, The U. S. Life Ins. Ann. & Trust Co., as a substitute therefor, and as an indemnity to said defendants, gave its bond to the Frat. Mut. Co., in the sum of $50,000, as a guaranty for the payment of all losses accruing upon policies issued, or to be issued by the Frat. Mut. Co.; the effect of which is, (as is alleged,) to render the U. S. Ins. Co. liable to the plaintiff for the payment of said loss.

The amended petition finally avers, that the U. S. Ins. Co. have not paid the said sum, in whole, or in part; wherefore judgment is claimed against her, as in original petition demanded.

The *answer* of the U. S. Life Ins. Ann. & Trust Co. was filed on the 2d day of May last, admitting all the material allegations of the petition, (except as hereinafter stated.) It sets forth a copy of the contract of the 1st October 1852, in ten articles.

ART. I. Purports to transfer to the foreign company the charter of incorporation, and all the powers, functions, privileges, and franchises incident thereto, of the *Home Company*, authorizing the exercise of the same by the foreign company.

ART. II. Provides for the continuance in office of the present board of directors of the *Home Company,* so long as mutually agreeable; to be re-elected, displaced, and replaced, at the option of the *foreign* company.

ART. III. Subjects the business of the *Home* Company wholly to the regulations of the foreign company.

ART. IV. Requires the Home office to demand on future policies the payment of premiums in cash, and to remit all premiums received to the foreign company.

ART. V. Transfers all moneys and notes received from policies issued to the foreign office.

ART. VI. Provides that the foreign company shall share one half the profits arising from compromises of losses, at less than their full amount, arising on policies previously issued.

ART. VII. Transfers all the *moneys,* bills receivable, accruing premiums, property, and effects of the Home Company, amounting in all to $8465.40, and also all papers, blanks, books, &c., relating to the business thereof, to the foreign office.

ART. VIII. Binds the foreign office to the payment of $2050, (or 479.02 over the cash received.)

ART. IX. Binds the foreign company to assume all outstanding risks upon policies issued, and *to be issued;* and by way of indemnity, to issue policies of re-insurance to the presidents of both companies, in trust for the Home Company.

ART. X. Binds the foreign company to prosecute the business of insurance in the city of Cincinnati with fairness and vigor, as contemplated by the charter of the *Home* Company.

The answer admits the *validity* of this agreement, and that the United States Company did assume thereby to

pay all losses accruing upon policies issued thereafter, (as well as before,) by the Fraternal Mutual Co.; upon the *express condition* however, (as alleged,) that premiums upon future policies should be paid in cash. Admits death of Lee, proof and notice thereof; his application to Frat. Mutual Co, for insurance; its *approval*, and the making of policy; and that thereupon, the Frat. Mut. Co. applied to the U. S. Co. for reinsurance, representing its compliance with the conditions of agreement, and especially, that of receiving cash only for premiums. That thereupon, the U. S. Co. issued the policy of re-insurance referred to, and delivered it in trust to J. L. Vattier and Stephen R. Crawford, presidents of the respective companies, in trust for the Frat. Mut. Co. Avers that policy, by its terms, was *not assignable;* and that Vattier, the president of the Frat. Mut. Co., attempted the assignment thereof wrongfully, and for the purpose of collusively depriving the U. S. Co. of her just defence against the claim of the Frat. Mut. Co.

Answer denies that the premium of $28.50, acknowledged in the policy of *re-insurance* to have been received, was in fact paid to the U. S. Co., or to the Frat. Mut. Co., or to any *agent*, authorized to receive and receipt for the same. Avers, that the *"Bond of indemnity"* was never accepted by the Frat. Mut. Co., nor the policy of re-insurance *delivered to her;* but made out, and remitted to Cincinnati, to take effect upon the performance of the conditions of the agreement, &c.

Avers that the United States Co. had no notice of the delivery of the *original* policy, and that the U. S. Co. never received, either directly or indirectly, from said Lee the premium thereon; that it was not credited to said Co.

on the books of the Fraternal Mutual Co.; and finally, that the policy of re-insurance *never took effect*, nor was treated by the parties as having gone into effect.

The bond of indemnity referred to, is annexed to the answer; but it is not deemed necessary to abstract it. It purports to be given to the presidents of *both companies*, in trust for both, as a *guaranty capital* for the Fraternal Mutual Co., in lieu of a like sum in the notes of the stockholders of the latter company, withdrawn by the agreement of October 1852.

The individual stockholders, who are made parties defendant to the petition, are all in default for answer.

The original policy of insurance, in addition to the acknowledgement of the receipt of premium, on the face of the policy, contains two endorsements, in the handwriting of M. L. Knapp, secretary, showing the payment of $28.50 premium, on the 7th March 1853, and of a like sum on 25th May 1853.

The policy of re-insurance contains an acknowledgement of the receipt of first premium.

The interest of the Fraternal Mutual Co., in the policy of re-insurance, and the money secured thereby, is assigned to the plaintiff by an endorsement thereon made by J. L. Vattier, president of said company, under the seal of the company, 18th March 1854.

It was proved on the trial by Wilson Carey, present secretary of the Fraternal Mutual Co., and also agent of the United States Co., that M. L. Knapp was secretary of the former company, and agent of the latter, at the time when both policies were issued, and so continued until June 1st 1853, at which time he was succeeded by Carey; Carey receiving from him all the papers of the Frater-

nal Mutual Company, and among others the policy of re-insurance.

That he examined the books of the Fraternal Mutual Co., and could find no credit given there for the payment of any premiums by Lee.

It was further proven by Carey, that the individual defendants, who were likewise directors of the Fraternal Mutual Co., had given their notes, (as alleged in petition,) as follows: Vattier $5000; Bates 5000; Messick 3000; W. Cameron 5000; Evans 5000; R. Cameron 5000; Conklin 5000; McLean 5000; Williams 3000; Matthews 5000; Moore 2000; which notes were withdrawn by the parties respectively, (without any resolution of the board,) at the time of giving the guaranty bond aforesaid.

So far as it relates to the claim of the plaintiff against the United States Co., the only matter really in controversy between the parties is, as to the due payment of the premiums set forth in the respective policies of insurance. All other questions are subordinate to this. Thus, it is admitted on the part of the defendant, that the policy of re-insurance was delivered, to take effect on the payment of the premium. And again, the only violation of the contract of October 1852, relied on by this defendant, is, that the premium set forth in the original policy, was not paid *in cash*, to the Fraternal Mutual Co.

Upon this question it is not deemed necessary to resort to the legal principle of estoppel claimed to exist, on the part of the plaintiff, viz.: "that the acknowledgement of the receipt of premium in the policy cannot be gainsaid, in an action on the policy, for a loss arising within it," although there is high authority for the rule. Thus, it is

said, " the payment, or non-payment of the premium, can " have no effect upon the insurance. Every insurer may " insist upon being paid the premium before he subscribes " the policy; but, having once subscribed it, and given " credit for the premium, *no matter to whom*, he shall not " afterwards be at liberty, when a loss has happened, " to object the want of consideration for his promise." *Marsh. Ins.* 240. It is enough, in the present case, to adopt the principle of the rule only so far, as to require clear and satisfactory proof of the non-payment of the premium, when that fact is relied upon in opposition to the acknowledgement of the policy, and especially in a case, where notice has not been given to the insured, before the loss happens, that such *non-payment* will avoid the policy.

How, then, stands the case?

The original policy of insurance was duly delivered to the *insured*. It contains on its face an acknowledgement of the payment of the premium required. In addition to this, is an endorsement on the back, made by the secretary and proper officer of the Fraternal Mutual Co., and at the same time agent for the United States Co., setting forth the payment of two quarters' premium, one on the 7th of March, and the other on the 25th of May, 1853. To avoid this proof of payment, the only fact relied upon, is, that the books of the Frat. Mut. Co. contain no account of, or credit for the payment of these premiums. This fact by no means proves, that the premiums were not in truth paid, and it is certainly consistent with the receipts given. The most that can be inferred from it is, that the secretary and agent was careless in keeping his accounts, or in paying over the funds received by him.

But in any event, these books were open to the inspection of the president, directors, and other officers of the company; as well also to Mr. Carey, the successor of Knapp, as secretary of the Frat. Mut. Co., and agent of the U. S. Co., (who came into office on the 1st of June 1853, nearly two months before the loss happened,) all of whom were aware that the policy had been issued, months before, and should have known whether the premiums were credited or not. And if that fact had been relied upon, notice should have been given to the insured.

Under all these circumstances, it seems idle to attempt an avoidance of this policy, upon the ground of the *non-payment* of the premium required.

The same course of reasoning may be applied to the policy of re-insurance. It is found in possession of the Fraternal Mutual Co., who assume to assign it over to the plaintiff. In the absence of other proof, this is sufficient evidence of its delivery by the one company, and its acceptance by the other. It contains upon its face an acknowledgement of the payment of premium, as to which it is said, that no credit was given therefor on the books of the company. As said of the *original policy*, the *unfaithfulness* of the *agent* in giving the credit, or in paying over the money, does not necessarily *falsify his receipt*.

But it is to be observed, that Knapp was the agent of both companies. Looking at the contract of October 1852, all premiums received on policies, issued by the Frat. Mut. Co., were to become at once the property of the U. S. Co. When therefore Mr. Knapp received the premiums from Lee, endorsed upon the original policy, they became at once, in his hands, the property of the

U. S. Co., and should have been credited on the policy of re-insurance.

The facts, therefore, which may be regarded as established in this case, and upon which the plaintiff relies for a recovery against the U. S. Life Ins. Ann. & Trust Co., are briefly these:

That on the 1st of October 1852, the Frat. Mut. Ins. Co., of Cincinnati, entered into a contract with the U. S. Ins. Co., (of Pennsylvania,) by which the former transferred to the latter all its property and effects, of whatsoever description, and agreed thenceforth to transact all its business, in its *own name*, but for the *exclusive profit* of the latter company; to be in all things under the control of the latter; and to act through agents appointed by the latter. The latter to assume all risks undertaken in the name of the former, and pay all losses arising therefrom; and to issue policies of re-insurance, covering the same.

In February 1853, Richard Henry Lee applied to the Fraternal Mutual Co. in Cincinnati, for an insurance upon his life, (for the sole benefit of his wife, present plaintiff,) in the sum of $5000, for the term of seven years. His application was referred to the office of the U. S. Co., and being *approved* by the latter, two policies of insurance were issued; one in the name of the Frat. Mut. Co., to him, in trust for his wife, bearing date 25th of February 1853, and the other, in the name of the U. S. Ins. Co., issued in behalf of the presidents of both companies, in trust for the Frat. Mut. Co., re-insuring the same life, upon the same terms, and dated the 24th day of February 1853. The latter intended as an indemnity against the former, and taking effect at the same time. The premiums on both policies were regularly paid, and the

other stipulations thereof complied with, on the part of the insured.

Lee died in July 1853; due proof, and notice of his death, was given to both companies, agreeably to the requisitions of both policies, in October following. The time appointed thereafter for the payment of the loss, under each policy, having elapsed without payment, suit is brought by the beneficiary, under the original policy, against both companies, (as well as against certain stockholders of the Frat. Mut. Co., who are alleged to be indebted by note, for capital stock of said company,) claiming a joint judgment against them all for the amount of said loss, say $5000 and costs. In this suit, a judgment has been rendered against the Frat. Mut. Co., by default, in the sum claimed, and execution issued thereon. Since that judgment, the Frat. Mut. Co. has assigned all its interests in the policy of *re-insurance*, and money due thereby, to the plaintiff, who by way of supplemental bill, sets up the assignment, and claims judgment thereupon, against the U. S. Ins. Co.

The original petition seeks to recover upon a policy of insurance issued by the Frat. Mut. Ins. Co., for the benefit of the plaintiff, upon which, it is said, the Frat. Mut. Co. are liable as principal contractors; (and judgment has been entered up against them accordingly.)

It is claimed, however, that the U. S. Ins. Co. are liable jointly on this contract of insurance, not as direct *parties* thereto, nor as *guarantors* thereof, to the plaintiff; but as *principals*, in fact, or in interest, the Frat. Mut. Co. being but the mere agents of the U. S. Co.

Now it is clear, that the Frat. Mut. Co. cannot be both agents and principals at the same time, on a contract

made with them alone as principals. It may perhaps be true, in certain cases, as claimed by plaintiff's counsel in argument, that when one is authorized to act for another, for his *exclusive benefit*, and does so act, giving the whole profit of the transaction to the principal, though contracting in his own name alone, an action may be brought against the *principal* himself, as the real party in interest in the transaction, wholly passing by the *agent*; or in such case, the action may be brought against the *agent* alone, at the option of the other party; the agent in such case acting as *principal*, and binding himself accordingly. But *both* can not be held liable. Thus: an insurance broker, effecting an insurance for *A.*, without disclosing his interest, renders himself liable for the premium; or, perhaps *A.* himself might be sued therefor; but *both* are not *jointly* liable. In this case, therefore, the claims being incongruous, the plaintiff should be put to her election, as to which she will proceed upon, and the other be stricken out of the petition. But judgment has already been entered up against the Fraternal Mutual Co. as *principal on this contract*, before another tribunal, over which the Court has no control. It would seem, therefore, as if no alternative were left, than to dismiss the petition as to this claim.

It may be remarked here, (in passing,) that the Court do not undertake to say, that a case might not have been made in which these parties would have been jointly chargeable. But it would have been on the ground of fraud, or collusion, in a case perhaps charging them with combining together, holding out false pretences to the world, whereby the petitioner may have been imposed upon, and is in danger of losing her just claim, unless the

parties can be jointly held. But such is not the case made in the petition.

The amended petition discloses two distinct grounds of claim against these defendants, which will be examined in their inverse order :

1. At the time of the alleged withdrawal of the notes given by the individual defendants, the U. S. Ins. Co. gave to the Frat. Mut. Co. a bond of indemnity in the sum of $50,000, as a guaranty for the payment of losses, &c. The effect of which, it is alleged, is to render the U. S. Co. liable to the plaintiff, for this loss.

It will be seen *at once*, that this claim is wholly *inconsistent* with the one set up by the plaintiff against the *individual stockholders*, whose notes have thus been given up. If the plaintiff claims, (as she does,) to hold these stockholders liable, upon their notes, (thus given up,) on the ground that it was wrongfully done, she cannot at the same time assume it was *rightfully* done, and charge the guarantors upon the substitute given for these notes. She must therefore make her election between them.

Should the plaintiff decline making an election, we feel disposed to strike out this claim from the petition, without prejudice, however, to any future prosecution of it, if deemed necessary, or advisable.

2. The other, and chief ground of claim is, upon the policy of *re-insurance*, given by the U. S. Co. to the Frat. Mut. Co., and by the latter *assigned to the plaintiff*, since the bringing of this suit.

We perceive no sufficient reason why the plaintiff has not a good cause of action against the U. S. Co. on this policy.

It has been already seen, that the policy was duly *executed* and *delivered*; premiums paid to, and acknowledged

by, the proper officer; loss and notice thereof duly proven; and the conditions of the policy in general complied with by insured. There was nothing therefore to hinder a suit upon it, in the name of the *insured.*

But it is said, that the policy contains a clause, to the effect that the "re-insurance thereby effected, shall not be *assignable* or *saleable*;" and therefore no recovery can be had upon it, except by, and in the name of the *insured.*

This clause in the policy, it seems to us, must have the same construction that is applied to like clauses in other policies, and that is, that it does not relate to assignments made *after* a loss has happened. 2 *Duer on Ins.* 63; 2 *Hall's Rep.* 372.

Then, the right of action, whatever it may have been, is *determined.* The assignment can work *no detriment* to the party; it changes *no rights* between them, and allows any defence that might have been made between the original parties. Indeed, it is doubtful, whether a clause, which attempted to prevent the assignment of the *right of action,* acquired under the policy, would not be considered void in equity, as interfering with the just control of one's rights. It is supposed, however, by the defendants' counsel, that this, being a policy of *re-insurance,* or *indemnity* only, does not come within the reason of the rule applicable to *original* policies. The distinction thus attempted, is not obvious to the Court. A policy of *re-insurance* is something more than a mere *contract* of *indemnity,* in the sense now used. It confers an original right upon the insured, to recover the sum insured, to the extent of the liability of the insured upon his original policy, even before he may have been compelled to pay the same. And although he may himself have become

*bankrupt,* and paid a *shilling* in the pound, to his insured; this will not preclude a recovery by his *assignee,* of the full sum stated in the policy of re-insurance. It is his *liability* to pay, which creates his interest in the risk, not the payment of such liability. Why, then, should not such a policy be assignable ? Why not, at all events, to the party originally insured ?

But it is finally said, that if his policy *be* assignable, it has not been assigned by the proper persons. Doubtless this is true, so far at least, as not to authorize a suit upon it at common law ; not so, in equity ; not so, under the Code.

This policy, by its terms, was issued to John L. Vattier, president of the Fraternal Mutual Co., and Stephen R. Crawford, president of the United States Co., for their sole use, *in trust* for the Frat. Mut. Co. This latter company, then, is the *beneficiary* under this policy, the party entitled in fact to the *fruits* of the policy; and the proper party, therefore, *in interest* under the Code, to sue for these fruits. This company has assigned whatever interest it may have had under the policy, and the money due thereby, to the plaintiff. This assignment would wholly preclude the Fraternal Mutual Co. from bringing an action; its interest is gone. Where, then, is it ? It is in the plaintiff, who under the Code may prosecute the action, for its recovery.

But there is another question, of some difficulty, to dispose of, growing out of the misjoinder of *distinct causes of action,* against different persons, against whom there cannot be a *common judgment,* in one petition.

It is evident, that an action against the Frat. Mut. Co., on the original policy of insurance, is not properly joined

with another, against the U. S. Ins. Co., on the policy of re-insurance.

There is no privity between them, and there cannot be a *joint* judgment against them. As well might a joint action be brought, against two defendants, upon two policies, covering distinct risks, or against two defendants, severally liable on two distinct notes. Nor is an action upon the policy of re-insurance, whereby one party alone is sought to be charged, properly joined with one against the stockholders in another company, charged upon notes given by them to such company, and which, it is said, ought to be applied in payment of a loss under the *original policy*.

Nor, finally, does it seem proper, in the *first instance*, to charge the stockholders, in the case last named, jointly with the company, in an action upon the original policy. Had a *demurrer* been filed, for the mis-joinder, it must have been sustained. The plaintiff would then have been compelled to elect upon which cause of action he would proceed, and abandon the others, or ask leave to separate his different causes of action, by filing several petitions thereon, and docketing an action for each.

If this cause had not been heard, it would perhaps have been the better practice, for the Court, *sua sponte*, to direct a severance. But as it is, and we are prepared to decide as to one of these defendants, we will not put the plaintiff to the delay of a separate petition. The plaintiff, therefore, may take judgment against the U. S. Life Ins. Ann. & Trust Co., upon the policy of re-insurance, for the sum of $5000, with interest, from the 13th day of January last, and costs.

As to the other defendants, who are *in default*, we do not think a case is made in the petition to warrant us in entering up a judgment against them, as therein claimed. The 10th Section of the charter of the Frat. Mut. Co., under which this claim arises, provides, " that if at any " time there be a just claim against the company for losses " sustained, to a greater amount than they have funds on " hand to discharge, the directors shall immediately assess " the deficiency in a *rateable proportion*, on *all* persons in- " debted by notes given for premiums in advance, accord- "ing to the amount of *each* note; of which assessment " *written notice* shall be given by the company to each " person so assessed; stating the amount required to be " paid by him.   And each person shall pay the same, " within sixty days after such notification; and in default " thereof, forfeit all right under his policy, cease to be a " member of the company, and be liable, to the amount " of such assessment, and all future assessments, with law- " ful interest, until paid, to be recovered by action," &c. " And said company may, at any time, collect the whole " thereof," &c.

The notes given in pursuance of this and the 13th Section of the Charter, though payable on *demand probably*, (for the time when payable, does not appear,) were evidently intended to meet losses arising under *policies*, and were not intended to be used in the ordinary business of the company; payment could only be called therefor, when the exigency of a loss, without other funds to meet it, should require; of which exigency, the *directors* of the company were to judge, and thereupon levy a *contribution* upon *all* the parties indebted, *pro rata;* whereupon payment was to be made in sixty days, &c.

Now, the *company* itself, could not call for the payment of these notes, except in the *mode prescribed;* and then, could not maintain an action thereon, until after *sixty days,* from the time when *written* notice had been served upon each of the parties, of the *amount to be paid.*

In the present case, there is no averment in the petition, that these stockholders were ever *notified* that a *loss had happened;* or that the funds of the company were insufficient to meet the loss alleged; or that a contribution was in any wise required at their hands; (except, so far as the *suit* itself gave such notice,) or the *amount* of contribution to be paid.

It is said, that ninety days having elapsed, after proof of loss, and before the bringing of the suit, the liability of these individual stockholders became thereby fixed and immediate. But this by no means follows. Until the liability of the company is *acknowledged,* or fixed by *judgment,* any payment made by a *debtor* of the company, would clearly be at his peril.

The liability of the debtor, in this case, is not concurrent with, but dependent upon that of the company; and it seems to us, that he cannot be *called* upon to pay, until after that of the company is acknowledged, or fixed by judgment.

But, in any event, the stockholder, or debtor, is no party to the *original promise,* to enforce which suit is brought; his promise is wholly *collateral* to it; and he is therefore improperly joined in an action to enforce that promise. This, it will be observed, is not a proceeding in *aid* of execution, but to enforce an original contract.

Upon the whole, we are of opinion, that the action should be discontinued, as to these defendants; or the

plaintiff is at liberty to docket a separate action against them, making the Frat. Mut. Co. party thereto, setting up the judgment, and stating such facts as will render these defendants liable, as upon a creditor's petition.

Judgment accordingly. WORTHINGTON and MATTHEWS for plaintiff; TAFT and KEY for defendants.